Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VARONIS SYSTEMS, INC., *Plaintiff*, v. SPHERE TECHNOLOGY SOLUTIONS, LLC, *Counterclaiming Defendant and Third-Party Plaintiff,* v. INSIGHT ENTERPRISES INC., *Third-Party Defendant.* | Civil Action No. 18-12055 **OPINION** |

**John Michael Vazquez, U.S.D.J.**

This case concerns a business dispute. D.E. 1, 24. Plaintiff Varonis Systems, Inc. ("Varonis") filed its Complaint against Defendant Sphere Technology Solutions, LLC ("Sphere"), seeking $167,520.39 for software products allegedly delivered to Defendant. D.E. 1 ("Compl."). Defendant counterclaimed against Plaintiff and filed a Third-Party Complaint against Insight Enterprises ("Insight") for, essentially, violating an alleged exclusive dealing arrangement. D.E. 24. Currently pending before this Court is Plaintiff's motion to dismiss Defendant's amended counterclaims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, and to strike Defendants' Third and Sixth affirmative defenses pursuant to Fed. R. Civ. P. 12(f) for failure to plead a sufficient defense.[1] D.E. 27. The Court reviewed the parties' submissions in support and

---

[1] Varonis does not identify which Federal Rule of Civil Procedure it is asking the Court to strike the affirmative defenses pursuant to, but the Court assumes Fed. R. Civ. P. 12(f).

in opposition,[2] and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the following reasons, the Court grants Plaintiff's motion to dismiss Defendant's amended counterclaims and denies Plaintiff's motion to strike Defendant's Third and Sixth Affirmative Defenses.

## I. INTRODUCTION[3]

Sphere is a software consulting company specializing in cybersecurity. FACC ¶ 1. Varonis is a software developer and seller. *Id.* ¶ 2. In 2011, the parties entered into a written agreement (the "2011 Agreement") whereby Varonis granted Sphere "a non-exclusive, non-transferable, non-sublicensable time-limited license to demonstrate, market, distribute and sell" Varonis' software products. D.E. 1-1, Ex. A ¶ 2.2. Sphere alleges that in 2017, the parties entered into an "agreement and understanding" (the "2017 Agreement") whereby Varonis granted Sphere exclusive rights to provide "after-purchase customer services" to consumers, or "end users," of Varonis' software. FACC ¶ 3. Sphere alleges that Varonis thereafter began re-routing its "end users" to Insight in violation of the 2017 Agreement. *Id.* ¶ 8.

Varonis sued Sphere on July 25, 2018, seeking $167,520.39 for software products that Varonis allegedly delivered to Sphere, asserting (I) breach of contract; (II) satisfaction of debt; and (III) breach of contract under the Uniform Commercial Code ("UCC") § 2-709. Compl. ¶¶ 33-56.

---

[2] Plaintiff's brief in support of its motion to dismiss will be referred to as "Pl. Br.," D.E. 27-1; Defendant's opposition will be referred to as "Def. Opp'n," D.E. 33; Plaintiff's reply will be referred to as "Pl. Reply," D.E. 35.

[3] The following facts are derived from Defendant's Amended Counterclaim, D.E. 24 at 11-19 ("FACC"), and documents relied upon therein, or integral thereto. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that a district court may consider a "document *integral to or explicitly relied* upon in" the pleading in reviewing a motion to dismiss that pleading) (emphasis in original).

2

On October 15, 2018, Sphere answered, asserting eight affirmative defenses and three counterclaims. D.E. 9. Varonis moved to dismiss these counterclaims. D.E. 19. Prior to a decision, Sphere amended its pleading as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1)(B). D.E. 24.

In its Amended Answer and Third-Party Complaint, Sphere asserted nine affirmative defenses; counterclaims for (I) tortious interference, (II) breach of the implied covenant of good faith and fair dealing, and (III) promissory estoppel; and a tortious interference claim against Insight. D.E. 24. Varonis then moved to dismiss the counterclaims and to strike the third affirmative defense that Varonis defrauded Sphere and "unlawfully interfered" with Sphere's contract with a third-party and with Sphere's prospective economic advantage;[4] along with the sixth affirmative defense that Varonis breached its agreement with Sphere. D.E. 27. Sphere opposed this motion, D.E. 33, and Varonis replied, D.E. 35.

## II. LEGAL STANDARD

Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability

---

[4] Sphere's affirmative defense actually alleges that Varonis interfered with Varonis' *own* contract with third-parties and with Varonis' *own* prospective economic advantage, D.E. 24 at 10, ¶ 3, but the Court assumes this to be a typo.

3

requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [its] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

Rule 12(f)

Rule 12(f) of the Federal Rules of Civil Procedure states that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The decision is discretionary. *F.T.C. v. Hope Now Modifications, LLC*, No. 09-1204, 2011 WL 883202, at *1 (D.N.J. Mar. 10, 2011). "An affirmative defense is insufficient if it is not recognized as a defense to the cause of action." *F.T.C.*, 2011 WL 883202, at *2 (citing *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F.Supp. 200, 217 (D.N.J.1993)) (internal quotations omitted). Thus, a motion to strike an affirmative defense "will only be granted 'when a defense is legally insufficient under any set of facts which may be inferred from the allegations of the pleading.'" *F.D.I.C. v. Modular Homes, Inc.*, 859 F. Supp. 117, 120 (D.N.J. 1994) (citing *Glenside*

4

*West Corp. v. Exxon Corp.*, 761 F.Supp. 1100, 1115 (D.N.J.1991)). Second, "even where the challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party." *Id.* Indeed, motions to strike "will generally be denied unless the allegations have no possible relation to the controversy and may cause [unfair] prejudice to one of the parties." *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002) (citing *Tonka*, 836 F.Supp. at 217) (internal quotations omitted).

Moreover, "[a]s a general matter, motions to strike under Rule 12(f) are highly disfavored." *Thompson v. Real Estate Mortg. Network, Inc.*, No. 11-1494, 2018 WL 4604310, at *2 (D.N.J. Sept. 24, 2018) (McNulty, J.) (citing *F.T.C*, 2011 WL 883202, at *1). They are disfavored because the motion is often sought "simply as a dilatory tactic." *F.T.C.*, 2011 WL 883202, at *1 (internal quotations omitted).

### III. ANALYSIS

The Court begins its analysis by addressing two critical points. First, Sphere argues that the Court cannot consider the 2011 Agreement because it is not "alleged or inferred in the counterclaim." Def. Opp'n at 1. As noted above, the Court considers any document *"integral to"* or explicitly relied upon in the complaint or in a counterclaim. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (emphasis in original). A party "cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." *Id.* Here, Sphere's counterclaims hinge on its business relationship with Varonis, including the parties' rights and duties in this relationship. A written agreement between the parties (which Sphere acknowledges and admits "speaks for itself," D.E. 24 at 3 ¶ 10) defining the parties'

respective rights and duties is integral to Sphere's counterclaims. Thus, the Court considers the 2011 Agreement in its analysis.[5]

Second, the Court recognizes, and Sphere admits, that "the entire counterclaim is based on Sphere's 'exclusive' agreement with Varonis, from December 2017 through March 2018" – the 2017 Agreement. Def. Opp'n at 7. However, Sphere fails to plausibly allege the existence of such agreement. Sphere only alleges the following:

> At all times relevant to this case, the parties shared a successful business relationship which included, for a limited duration beginning December 2017 and ending March 2018, an agreement and understanding for [Sphere], exclusively, to provide after-purchase customer service to "end users" pursuant to [Varonis]'s end-user license agreements regarding its computer software.

FACC ¶ 3. Sphere does not clarify whether this "agreement and understanding" was in writing or oral. Sphere does attach any purported written agreement as an exhibit. Sphere does not indicate who, specifically, from Varonis entered into an oral agreement with who, specifically, from Sphere, and whether such individuals had the authority to bind their respective entities. Sphere's only allegations as to the 2017 Agreement are conclusory. Sphere has, as a result, not plausibly alleged that the 2011 Agreement no longer binds the parties. This infirmity infects each of Sphere's counterclaims.

Tortious Interference

Sphere brings counterclaims for both tortious interference with an existing contract and tortious interference with a prospective business advantage. FACC ¶¶ 14-19; Def. Opp'n at 5-7.

---

[5] Because the Court considers the 2011 Agreement, and the dispute arises out of this contractual relationship, the Court credits the parties' New York choice of law provision, 2011 Agreement ¶ 10.3. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 59 (1995) ("The choice-of-law provision . . . may reasonably be read as merely a substitute for the conflict-of-laws analysis that otherwise would determine what law to apply to disputes arising out of the contractual relationship.").

First, a claim for tortious interference with an existing contract requires: "(1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to plaintiff." *M.J. & K. Co. v. Matthew Bender & Co.*, 631 N.Y.S.2d 938, 940 (App. Div. 1995) (internal quotations omitted).

As explained above, Sphere has not plausibly alleged the existence of a 2017 Agreement. This shortcoming alone dooms Sphere's counterclaim. Sphere has also not sufficiently alleged that the 2011 Agreement no longer binds the parties. The 2011 Agreement explicitly granted Sphere a "non-exclusive . . . license to demonstrate, market, distribute and sell" Varonis' software and stated that "[n]othing contained in this Agreement shall be construed as granting any exclusive rights" to Sphere. 2011 Agreement § 2.2. Further, the 2011 Agreement stated that Sphere could "not negotiate the terms of the End User License Agreement or a Service Level Agreement with any prospective Customer or agree to any conflicting, different or additional terms." *Id.* § 2.3. Thus, under the 2011 Agreement, Sphere could not contractually require end-users to deal exclusively with Sphere in servicing Varonis products. Accordingly, even by directing end-users to use companies other than Sphere, Varonis could not have interfered with valid contracts between Sphere and end-users, as those contracts could not have required exclusivity to begin with. At a minimum, Sphere fails to plausibly establish the third element of its claim for tortious interference with an existing contract.[6]

---

[6] Varonis also argues that Sphere fails to plausibly establish the first element: the existence of a contract between Sphere and an end-user. Pl. Reply at 7. The Court agrees. Sphere only makes the conclusory allegation that it has "exclusive service arrangements with [Varonis]'s end users," FACC ¶ 17, but does not attach any such agreement or provide any further details. This is another deficiency in Sphere's counterclaim.

Second, a claim for tortious interference with a prospective business advantage requires that "(a) the plaintiff had business relations with a third party; (b) the defendant interfered with those business relations; (c) the defendant acted with the sole purpose of harming the plaintiff or by using unlawful means; and (d) there was resulting injury to the business relationship." *Thome v. Alexander & Louisa Calder Found.*, 890 N.Y.S.2d 16, 29 (App. Div. 2009). "Tortious interference with business relations applies to those situations where the third party would have entered into or extended a contractual relationship with plaintiff but for the intentional and wrongful acts of the defendant." *M.J. & K.*, 631 N.Y.S.2d at 940 (internal quotations omitted). "In such an action the motive for the interference must be solely malicious, and the plaintiff has the burden of proving this fact." *Id.* (internal quotations and alterations omitted).

Again, Varonis could not have interfered with Sphere's prospective business relations with end-users via the actions alleged since, under the 2011 Agreement, Sphere could not have expected exclusivity in servicing Varonis' end-users. Therefore, at a minimum, Sphere fails to plausibly plead the second element of its claim for tortious interference with a prospective business advantage.[7] In addition, Sphere fails to sufficiently allege the necessary business relations with the purported third parties. The first counterclaim is dismissed without prejudice.[8]

---

[7] Varonis also argues that Sphere fails to plausibly establish the third element, which requires malice. Pl. Br. at 8; Pl. Reply at 8. The Court does not reach this argument but notes that New York courts recognize that "normal economic self-interest" does not constitute malice for purposes of the third element. *E.g. Carvel Corp. v. Noonan*, 3 N.Y.3d 182 (2004).

[8] This analysis would yield the same result under either New York or New Jersey law. *See Hahn v. OnBoard LLC*, 2009 WL 4508580, at *7 (D.N.J.) ("The legal elements for tortious interference with a contract and tortious interference with prospective economic advantage are the same in both New York and New Jersey.").

Breach of Implied Covenant of Good Faith and Fair Dealing

Sphere brings a counterclaim for breach of implied covenant of good faith and fair dealing. FACC ¶¶ 20-24. Under New York law, "all contracts imply a covenant of good faith and fair dealing in the course of performance." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002). This implied covenant requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* "While the duties of good faith and fair dealing do not imply obligations inconsistent with other terms of the contractual relationship, they do encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included." *Id.* (internal quotations and citations omitted).

Again, this counterclaim is deficient because Sphere fails to plausibly allege the existence of the 2017 Agreement. And, again, the 2011 Agreement expressly renounces exclusivity. 2011 Agreement § 2.2. The second counterclaim is dismissed without prejudice.[9]

Promissory Estoppel

Sphere brings its third counterclaim for promissory estoppel. FAC ¶¶ 25-29. "The elements for such a claim are (1) a promise that is sufficiently clear and unambiguous; (2) reasonable reliance on the promise by a party; and (3) injury caused by the reliance." *Schroeder v. Pinterest Inc.*, 133 A.D.3d 12, 32 (N.Y. App. Div. 2015). Here, as explained above, Sphere fails to plausibly allege that Varonis promised Sphere exclusivity in servicing its end-users. Therefore,

---

[9] The Court notes that its analysis would yield the same result under either New York or New Jersey law. *See Clarkson v. Vioquest Pharm., Inc.*, 2011 WL 3924824, at *8 (N.J. Super. Ct. App. Div. Sept. 8, 2011) (affirming dismissal of claim for breach of covenant of good faith and fair dealing under both New York and New Jersey law when the defendant's conduct was not contrary to reasonable expectations under the contract).

Sphere has not plausibly pled the first element of a promissory estoppel claim.[10] The third counterclaim is dismissed without prejudice.[11]

Affirmative Defenses

In a footnote in its moving brief and a paragraph in its reply – without any further analysis – Varonis argues that the Court should strike Sphere's Third and Sixth Affirmative Defense because they are the "mirror image" of the counterclaims, which are insufficiently pled. Pl. Br. at 2 n.2; Pl. Reply at 9. Such argument inappropriately equates the legal standard for striking affirmative defenses under Rule 12(f) and dismissing claims under Rule 12(b)(6), as set forth above. Here, the Court cannot say that the affirmative defenses have no possible relation to the controversy and are legally insufficient under any set of facts which may be inferred from the allegations of the pleading. A 2017 Agreement can be inferred from the allegations, although it is not plausibly pled. The Court denies Varonis' motion to strike Sphere's Third and Sixth affirmative defenses.

## IV. CONCLUSION

In sum, the Court grants Varonis' motion to dismiss Sphere's counterclaims, D.E. 27, without prejudice. The Court denies Varonis' motion to strike Sphere's Third and Sixth Affirmative Defenses. Sphere has thirty (30) days to file amended counterclaims, if it so chooses,

---

[10] Because Sphere fails to meet the first element, the Court does not analyze Varonis' additional arguments as to promissory estoppel.

[11] The Court notes that its analysis would yield the same result under either New York or New Jersey law. *See Stockalert, Inc. v. Nasdaq Stock Mkt., Inc.*, No. 95-9335, 1998 WL 556036, at *13 (S.D.N.Y. Sept. 1, 1998) ("[R]egardless of [whether New Jersey or New York] law applies to this claim, the outcome of this motion will not change because the elements of a promissory estoppel claim in either state are substantially the same.").

consistent with this Opinion. If Sphere does not do so, its counterclaims will be dismissed with prejudice. An appropriate Order accompanies this opinion.

Dated: May 14, 2019

John Michael Vazquez, U.S.D.J.